UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00484-FWS-JDE Date: July 28, 2026

Title: E.S. *et al.* v. Newport-Mesa Unified School District

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**PROCEEDINGS: MEMORANDUM OF DECISION**

## I. Introduction and Background

Plaintiffs E.S. and S.S., on behalf of their minor child, D.S. (together, "Plaintiffs"), filed this action against Defendant Newport-Mesa Unified School District (the "District") appealing the decision of an administrative law judge ("ALJ") in the Office of Administrative Hearings ("OAH") regarding whether the District provided D.S. adequate educational services. (*See generally* Dkt. 1 (Complaint).) In particular, the District provided D.S. with Individualized Education Plans ("IEPs"), but D.S.'s parents believed the IEPs were not enough to provide him with a free appropriate public education ("FAPE") as guaranteed by the Individuals with Disabilities Education Act ("IDEA"). (*See id.*)

The IDEA offers states federal funding for providing a FAPE "to all children with certain physical or intellectual disabilities." *Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1129 (9th Cir. 2021), *cert. denied sub nom. S.W. on Behalf of B.W. v. Capistrano Unified Sch. Dist.*, 143 S. Ct. 98 (2022). A FAPE includes instruction tailored to meet the child's unique needs and sufficient supportive services to permit the child to benefit from that instruction. *Id.* IEPs, which a team of "school officials, teachers, and parents" assembles and reviews annually, are "the primary vehicle for providing each child with a FAPE." *Id.* (cleaned up). They describe, among other things, measurable academic goals for the child and the "special education and related services and supplementary aids and services" that will be

provided to help the child meet those academic goals. *Id.* at 1129–30; 20 U.S.C. §§ 1414(d)(1)(A)(i)(II)–(V).

When parents and school districts have disputes over whether a FAPE has been provided, parents may file an administrative complaint. *S.W.*, 21 F.4th at 1129. Then, after a preliminary meeting of the parties, an impartial hearing officer holds a "due process hearing" regarding whether the child received a FAPE. *Id.* In this case, "Administrative Law Judge Ashok Pathi heard this matter via videoconference on October 1, 2, 9, 10, 11, 15, and 16, 2024." (AR at 851.) In a 106-page order issued on December 12, 2024, after the parties submitted closing briefs, ALJ Pathi found that D.S. "did not prevail on any issues" and "denied" "[a]ll of [D.S.'s] requested relief." (Dkt. 23 (Administrative Record, "AR") at 956.)

Plaintiffs now appeal. *See S.W.*, 21 F.4th at 1129 ("[A] parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court."). Before the court are Plaintiffs' Principal Brief, (Dkt. 33 ("P. Br.")), Defendant's Responsive Brief, (Dkt. 34 ("D. Br.")), and Plaintiffs' Reply Brief, (Dkt. 36 ("P. Reply")). The court held a one-day bench trial on June 23, 2026. (Dkt. 37.) At the court's request at the bench trial, the parties submitted proposed findings of fact and conclusions of law. (Dkt. 38 ("P. PO"); Dkt. 39 ("D. PO"); Dkt. 40.) Based on the record, as applied to the relevant law, the court now **AFFIRMS** the ALJ's decision.

## II. Standard of Review

"When a party challenges the outcome of an IDEA due process hearing, the reviewing court receives the administrative record, hears any additional evidence, and, 'basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *R.B. ex rel F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007) (quoting 20 U.S.C. § 1415(i)(2)(B)). This means that judicial review in IDEA cases differs from judicial review of other agency actions in two ways. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). First, while in judicial review of other agency actions courts generally are confined to the administrative record, courts in IDEA cases may "hear additional evidence at the request of a party." *Id.* (quoting 20 U.S.C.A. § 1415(e)(2)).

Second, whereas "a highly deferential standard of review" applies to review of other agency actions, courts in IDEA cases base their decisions "on the preponderance of the evidence." *Id.* However, courts give "due weight" to the administrative decision and take care not to "substitute their own notions of sound educational policy for those of the school authorities." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982)). They consider administrative "findings carefully," giving "particular deference" when those findings are "thorough and careful." *R.B.*, 496 F.3d at 937 (quoting *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994)).

## III. Discussion

Plaintiffs argue the District denied D.S. a FAPE through (A) procedural errors and (B) substantive errors. The court addresses each in turn.

### A. Procedural Errors: IEP Team Attendance

"One of the IDEA's procedural requirements is the creation of an IEP team to determine a child's eligibility for IDEA benefits." *R.B., ex rel. F.B.v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 938 (9th Cir. 2007). The statute provides what members an IEP team must have, and also provides that IEP team members must be present at IEP meetings unless their attendance is not necessary or they are excused. *See* 20 U.S.C. §§ 1414(d)(1)(B)-(C).

In this case, Plaintiffs argue the District committed procedural errors that denied D.S. a FAPE by failing to ensure adequate IEP team meeting attendance. (*See* P. Br. at 15-17.) In particular, Plaintiffs argue the District "did not ensure the attendance of . . . the school psychologist, the occupational therapist, the adapted physical education teacher, and the administrator" at the March 2022 IEP meeting; the school psychologist at the May 2022 IEP meeting; the school psychologist, occupational therapist, and the Adapted Physical Education teacher at the March 2023 IEP meeting; and the school psychologist, occupational therapist, and an administrator at the May 2024 IEP meeting. (*Id.*)

Based on the entire record, the court finds Plaintiffs fail to adequately demonstrate there was a procedural violation; the evidence established that the relevant participants (a) were present, (b) were present at an earlier iteration of the meeting such that their participation in the continuation of the meeting was unnecessary, (c) were not necessary because other present individuals adequately addressed the topics the non-present person would have addressed or filled the role the non-present person would have filled, or (d) their participation was not necessary. (*See* AR at 865-67[1]; D. PO at 6-8.) Moreover, "[n]ot all procedural violations deny the child a FAPE"; rather, "a child is denied a FAPE only when the procedural violation results in the loss of educational opportunity or seriously infringes the parents' opportunity to participate in the IEP formation process." *R.B.*, 496 F.3d at 938 (citation modified). Here, even if there were a procedural violation, the court finds Plaintiffs fail to adequately demonstrate that such a procedural violation "result[ed] in the loss of educational opportunity or seriously infringes the parents' opportunity to participate in the IEP formation process." *R.B.*, 496 F.3d at 938; (*see* AR at 865-67; D. PO at 8).

### B. Substantive Errors

Plaintiffs argue the District committed procedural errors that denied D.S. a FAPE by not offering appropriate (1) placement, (2) services, or (3) goals. (P. PO at 4-5.) Plaintiffs "bear the burden of showing that the [IEPs] did not satisfy the IDEA requirements." *S.W.*, 21 F.4th at 1133. The court finds Plaintiffs have not met that burden.

#### 1. Improper Placement

Plaintiffs argue that the District failed to offer D.S. appropriate placement by recommending public school placement (first at Eastbluff Elementary and then at Corona Del Mar Middle School) because D.S. "required a more intensive placement, such as an NPS, to address his needs." (P. Br. at 18; *see id.* at 22 (arguing D.S.'s performance "indicated the need

[1] The ALJ's 106-page decision set forth a detailed factual background and made extensive factual findings. Because the ALJ's findings were thorough and careful, the court gives them particular deference. *R.B.*, 496 F.3d at 937.

for a more intensive placement with greater support, such as an NPS like NVS"); *id.* at 25-26 (similar); *see also* P. PO at 3-4.) The IDEA provides that students should be educated in the "least restrictive environment." 20 U.S.C. § 1412(a)(5). This means that, "[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.*

Courts apply a four-factor test to determine whether a school district complied with the least restrictive environment requirement. *D.R. by & through R.R. v. Redondo Beach Unified Sch. Dist.*, 56 F.4th 636, 643 (9th Cir. 2022). "The first and most important factor compares the academic benefits a child receives from placement in the regular classroom with the academic benefits available in a special education classroom." *Id.* "The second factor considers the non-academic benefits a disabled child derives from being educated in a regular classroom, such as the development of social and communication skills from interaction with nondisabled peers." *Id.* (cleaned up). "The third factor weighs the potential negative effects a disabled child's presence may have on the education of other children in the classroom." *Id.* "The fourth factor considers the costs to the school district of providing the supplementary aids and services necessary to educate a disabled child in the regular classroom." *Id.*

As stated, Plaintiffs argue D.S.'s placement in public schools failed to comply with the least restrictive environment requirement and that he should have placed in an NPS. The court is not persuaded. As an initial matter, the court gives "due weight" to the ALJ's "thorough and careful" finding that Plaintiff's "offered psychologist Shinn's . . . testimony" was "unpersuasive" because it was based on "her erroneous interpretation of Student's previous IEP goal progress" and by information "not available to the IEP team at the" time of the relevant meetings. *Van Duyn*, 502 F.3d at 817; *R.B.*, 496 F.3d at 937; (AR at 897-98; *see also* P. PO at 3 (relying on testimony from witness from NPS that D.S. improved at NPS as evidence that different placement was necessary—information not available at the time the placement decision was made)); *see also Newport-Mesa Unified Sch. Dist. v. D. A.*, 2024 WL 1367170, at *1 (9th Cir. Apr. 1, 2024) ("But plaintiffs' argument relies almost entirely on the testimony of

their expert, Dr. Shinn, whom the ALJ deemed 'unpersuasive,' including because she 'did not consider the personal accounts from District staff.' The ALJ meanwhile reasonably credited the District's witnesses, given their personal experience with M.A.") (cleaned up).

"An 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987). The court has reviewed the four factors and finds, on balance, that they weigh in favor of a finding that the District complied with the least restrictive environment requirement. *See D.R.*, 56 F.4th at 643. It is clear that D.S's "parents [and staff at the NPS] believe emphatically that" D.S.'s placement at the NPS "has helped him learn." *Id.* The court's "review, however, must focus primarily on the District's proposed placement, not on the alternative that the family preferred. Even if the [NPS placement] were better for [D.S.] than the District's proposed placement, that would not necessarily mean that the placement was inappropriate. [The court] must uphold the appropriateness of the District's placement if it was reasonably calculated to provide [D.S.] with educational benefits." *Id.* And the court finds that it was; the District appropriately determined, considering factors including the nonacademic benefits D.S. would receive from a public school placement, that a public school placement was the least restrictive environment for D.S. at the time the relevant IEPs were drafted. *See D. R.*, 56 F.4th at 643. (*See* AR at 897-99; D. PO at 18-20.)

### 2. Insufficient Services

Plaintiffs next argue the District denied D.S. a FAPE by failing to offer appropriate services, in particular a 1:1 aide due to D.S.'s "significant executive functioning, behavioral, and social needs" including "inattention and impulsive behaviors" and need for "social-emotional regulation" support; occupational therapy services for D.S.'s "fine motor, visual motor, and sensory processing needs"; speech/language services due to D.S.'s "motivation, cognitive ability, level of deficit, and areas of unique needs" in areas of communication"; specialized academic instruction due to the fact that D.S. "demonstrated that he could make progress and learn when provided with the right supports, including a small setting with specialized instruction"; and extended school year services to address D.S.'s "regression." (P. Br. at 19-20, 23-24, 26-27.) As an initial matter on this issue, the court gives "due weight"

to the ALJ's "thorough and careful" findings regarding the witnesses relevant to this issue, including that "Shinn's testimony was not persuasive for several reasons and given little weight"; that "Newport-Mesa staff, including Student's classroom teacher Bain, universally and credibly explained that Student did not require a one-to-one aide to receive a FAPE"; that Plaintiffs' "occupational therapist Roley's testimony regarding [D.S.'s] need for occupational therapy services . . . gave a . . . vague, conclusory, and unpersuasive opinion that Student required occupational therapy services, based on incomplete information"; and that Plaintiffs' "offered speech and language pathologist Rozenberg's . . . opinion" was "unpersuasive," in part because certain testimony was "was hesitant and not convincing." *Van Duyn*, 502 F.3d at 817; *R.B.*, 496 F.3d at 937; (AR at 887, 889, 891, 894-95).

Again, an "appropriate" public education does not mean the absolute best or "potential-maximizing" education for the individual child. *Rowley*, 458 U.S. at 197 n.21, 200. Rather, the IDEA requires only "a basic floor of opportunity" through programs "individually designed to provide educational benefit" to the child. *Id.* at 201. IEP services therefore need only "be reasonably calculated to confer a meaningful benefit on the child." *Adams v. State of Oregon*, 195 F.3d 1141, 1150 (9th Cir. 1999). School districts are "entitled to deference in deciding what programming is appropriate as a matter of educational policy," and are "not required to use the methodology a parent prefers when providing special-education services for a child." *Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1056 (9th Cir. 2022). In addition, courts assess whether an IEP's methods were reasonably calculated to confer a meaningful benefit on the student from the time the IEP was drafted, not from hindsight. *Adams*, 195 F.3d at 1149. Using hindsight is not forbidden, but hindsight may only be used to assess IEP adequacy when it "provide[s] significant insight into the child's condition, and the reasonableness of the school district's action, at the earlier date." *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist.*, 652 F.3d 999, 1006 (9th Cir. 2011); *see, e.g.*, *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 454 (9th Cir. 2010) (rejecting argument that student's lack of progress proved he was denied a FAPE because it "ignore[d] the 'snapshot' evaluation of an IEP" under which courts evaluate what was objectively reasonable when the IEP was drafted); *Adams*, 195 F.3d at 1149 ("Instead of asking whether the IFSP was adequate in light of the [the child's] progress, the district court should have asked . . . whether the IFSP was appropriately designed and implemented so as to convey [him] with a meaningful benefit.")).

Especially in light of the court's deference to the ALJ's findings regarding the relevant witness's testimony, the court finds Plaintiffs do not adequately demonstrate the District failed to provide D.S. a FAPE by providing insufficient services. (*See also* D. PO at 12-18.) Of particular note is the ALJ's discussions regarding why psychologist Shinn's testimony was unpersuasive in this area:

> Shinn improperly discounted Student's progress on this behavior goal. Throughout her testimony, Shinn treated Student's progress on goals simply as met or unmet, regardless of Student's level of progress on any given goal. She explained her opinion that "not met is not met." On cross examination, Shinn evasively reiterated her illogical opinion that a student only makes adequate progress if they meet their IEP goals.
>
> Special education law does not embrace this binary view of goal progress. This method of evaluating the adequacy of an IEP relies on judging an IEP in hindsight and is in direct contrast to the law. (*Adams v. State of Oregon, supra*, 195 F.3d at 1149.) Additionally, school districts must review a child's level of progress on goals when revising a child's IEP, not just whether the goals were or were not met. (20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. § 300.324(b).) Shinn failed to adequately credit Student's progress on his behavior goal when he achieved 70% mastery, and the goal called for Student to demonstrate this skill at 80% mastery.
>
> Shinn compounded this error by summarizing Student's overall progress on all his previous goals as meeting less than 50% of them. Even by Shinn's erroneous standard, this statement was incorrect as Student had met six of his 10 goals – more than 50%. Student had made significant progress on the goals that he did not meet, falling short by as little as 10% mastery for two of his unmet goals.

> Nevertheless, Shinn maintained her interpretation of Student's goal progress and applied this reasoning throughout her testimony. This included her opinion that Student "absolutely" needed a one-to-one aide. Shinn repeated this improper method for evaluating progress on goals throughout her testimony, which negatively impacted her persuasiveness.
>
> It is notable that Shinn's opinion of adequate progress was inconsistent in her later testimony. Despite demanding perfection from Newport-Mesa, Shinn readily excused or otherwise downplayed Student's minimal progress at New Vista. This contrast revealed a significant bias that undermined Shinn's credibility and the persuasiveness of her entire testimony.

(AR 888-89.) Simply stated, many of Plaintiffs' arguments that additional services were required is based on Plaintiffs' contention that D.S. was making less progress than the record reflects he actually was. Based on the entire record, as applied to the relevant law, the court finds Plaintiffs do not adequately demonstrate that the District failed to provide D.S. a FAPE by providing insufficient services.

### 3. Sufficient and Appropriate Goals

Plaintiffs next argue the goals in D.S.'s IEPs "were insufficient to address his needs," either because, according to Plaintiffs, the District should have offered goals in areas it did not, or because the District offered insufficiently ambitious goals in areas it did. (P. Br. at 20-22, 24-25, 27-28.) In particular, D.S. argues the District "did not include any IEP goals to address" various needed areas, such as "expressive vocabulary and idiomatic language"; "reading pace, attentional deficits, aggression, conduct, withdrawal, and depression"; "sensory processing needs"; "nonverbal language and inference-making"; and "visual-motor [and] fine-motor" needs. (P. Br. at 20-21, 24-25, 27-28.)

An IEP must include "a statement of measurable annual goals" and describe "how the child's progress toward meeting the annual goals . . . will be measured." 20 U.S.C. § 1414(d)(1)(A)(i)(II)–(III); *see* 34 C.F.R. § 300.320(a)(2)–(3). A child's "educational program must be appropriately ambitious in light of his circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 402 (2017). "The goals may differ, but every child should have the chance to meet challenging objectives." *Id.* "An IEP is not required to contain every goal from which a student might benefit." *S.W.*, 21 F.4th at 1133 (cleaned up).

Once again, the court defers to the ALJ's thorough and reasoned views regarding witnesses who testified regarding the goals in D.S.'s IEPs. (*See, e.g.*, AR at 902-03 ("Rozenberg did not recognize the relevance of this goal to Student's communication needs, and initially testified that the March 14, 2023 IEP did not contain goals addressed by a speech and language pathologist. This error demonstrated Rozenberg's lack of knowledge of Student's March 14, 2023 IEP and further weakened the persuasiveness of her testimony."); *id.* at 903-04 (opining that Roley's opinions were "vague and conclusory" and "not persuasive"; that "Roley did not demonstrate an understanding or personal knowledge of the relevant classroom environment, including Student's strengths and weaknesses in that setting"; and that "Student solicited the majority of Roley's opinions though leading questions, which further undermined her persuasiveness"); *id.* at 905-06 (similar regarding Roley's testimony and opinions on other goals); *id.* at 909 ("Student solicited testimony from speech and language pathologist Rozenberg, who gave an unpersuasive, conclusory opinion that Student had additional areas of need based on the results of the March 2022 Multidisciplinary Report. However, she did not clarify what areas of need were missing or adequately explain what other goals Student required for a FAPE. Moreover, Rozenberg did not demonstrate personal knowledge of Student's educational performance at that time," but instead "based her opinions on her reading of the March 14, 2023 IEP document. As explained previously, Rozenberg demonstrated significant misinterpretations of the plain text of the March 14, 2023 IEP document, made multiple assumptions about the meaning of various entries, and demonstrated a poor understanding of the document."); *id.* at 910 (explaining that "psychologist Shinn's . . . testimony" regarding goals was "unpersuasive" for reasons including insufficient explanation, misunderstandings of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00484-FWS-JDE Date: July 28, 2026
Title: E.S. *et al.* v. Newport-Mesa Unified School District

the relevant goals, and an "error [that] demonstrated Shinn's unfamiliarity with Student's IEPs" which further undermined her persuasiveness"); *id.* at 925 (describing District special education teacher Ault's testimony that to prepare for an IEP meeting, she tried to get information from the NPS, but the NPS provided only "sparse" or "limited information regarding Student's needs and abilities, including math, communication, and behavior," and "did not provide clear updated information on Student's reading and writing skills"; Ault was able to observe Student some at the NPS but "credibly explained that she wanted to observe Student more, but that she was not given permission by" the NPS," and "[b]ecause Ault was not able to observe Student engaging in reading and writing tasks, Newport-Mesa staff had to rely on the information they had when crafting annual goals in the March and May 2024 IEPs"); *id.* at 926 (referring again to Shinn's "unpersuasive testimony"); *id.* at 926-27 ("Roley's opinion regarding Student's sensory processing needs during the 2023- 2024 school year were based on an Occupational Therapy IEE she conducted with one of her colleagues, Dr. Kelly Auld-Wright, in January 2024," but "this assessment did not provide reliable and complete information, which undermined the persuasiveness of Roley's testimony.").)

Against this backdrop, the court finds Plaintiffs have made an insufficient showing that the goals the District included in D.S.'s IEPs were inadequate, either because certain goals were lacking or because the goals included were insufficiently ambitious. Rather, the court finds the goals Plaintiffs argue were missing were either sufficiently included in the IEPs, "reasonably covered under other goals," or not necessary to be included. *D. A.*, 2024 WL 1367170, at *1 (9th Cir. Apr. 1, 2024) ("Yet the former was reasonably covered under other goals, and 'an IEP is not required to contain every goal from which a student might benefit.'") (quoting *S.W.*, 21 F.4th at 1133). Moreover, "the sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003). And the court finds Plaintiffs have not adequately demonstrated that the goals in D.S.'s IEPs were so deficient that the court should override the District's expertise in this area. *See id.*

Finally, the court finds unpersuasive Plaintiffs' cursory and conclusory arguments that "many of the goals offered included flawed baselines that did not provide enough context to be measurable." (P. Br. at 28; *see id.* at 24-25 (similar). "[T]here is no specific form of

measurement required by statute or caselaw." *S.W.*, 21 F.4th at 1133 (citation omitted) (citing *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1122 (9th Cir. 2011) (explaining that goal measurement may be "based on teachers' subjective observations")). "Thus, goals could be measured ordinally (*e.g.*, no improvement/some improvement/significant improvement), quantitatively, or in some other way." *R.P.*, 631 F.3d at 1134. IEPs need not include quantifiable baselines. *See A.G. v. Paso Robles Joint Unified Sch. Dist.*, 561 F. App'x 642, 644 (9th Cir. 2014); *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 575 F. App'x 796, 799 (9th Cir. 2014) (concluding that baselines "provided sufficient information upon which to measure [student's] progress toward goals" and "lack of greater specificity in the baselines did not amount to a denial of a FAPE"). Indeed, the Ninth Circuit has rejected the argument that "an IEP necessarily cannot be reasonably calculated [to enable a child to make progress] unless the data are consistently collected," noting that "the IDEA contains no requirement to rely on quantitative data at all." *S.W.*, 21 F.4th at 1135. Plaintiffs have not made a sufficient showing that the IEP goals were inadequate based on flawed baselines.

### C. Summary and Conclusion

Based on the entire record, as applied to the relevant law, the court finds Plaintiffs have not shown by a preponderance of the evidence that the District denied D.S. a FAPE, either through procedural or substantive errors. *See S.W.*, 21 F.4th at 1133; *R.B.*, 496 F.3d at 937. The ALJ's decision is therefore **AFFIRMED** and Plaintiffs' requested relief is **DENIED**.

## IV. Disposition

For all of the foregoing reasons, the court **AFFIRMS** the decision of the ALJ. All of Plaintiffs' requested relief is **DENIED**.